STATE OF NORTH CAROLINA v. JAMES LLOYD YOUNG

No. 7412SC210

(Filed 1 May 1974)

1. **Searches and Seizures § 1— automobile in plain view — warrantless search and seizure**

Officers were justified in concluding that defendant's car constituted evidence of a crime where a murder had been committed, defendant was the last person seen with the victim, defendant's trailer had just burned down under the most suspicious circumstances, and defendant's car had blood on the door handles and bumper, and officers properly seized the car without a warrant since it was in plain view when they went to defendant's trailer park to find him for interrogation purposes.

2. **Criminal Law § 77— "confidential statement" of defendant — admissibility**

> Where defendant made two statements to a police officer, the first a statement which the officer agreed to keep confidential and the second a signed confession, the trial court in a prosecution for murder did not err in admitting into evidence the confidential statement, since additional information contained therein did not relate to the guilt or innocence of defendant and was not of sufficient significance to have affected the jury's verdict.

3. **Criminal Law § 102— jury argument of solicitor — no prejudice**

> In this murder case the district attorney's remarks in his jury argument were not of such an inflammatory character as to form the basis for prejudicial error, and the trial court did not abuse its discretion in allowing him to proceed with his argument.

APPEAL by defendant from *Braswell, Judge,* 24 September 1973 Session of Superior Court held in CUMBERLAND County.

Defendant was charged with the murder of Cecelia Finch (Ce Ce) Kvist.

The State's evidence at the trial tended to show that on the night of 16 May 1973, defendant was with Ce Ce Kvist in the Frontier Lounge in Fayetteville. At 11:00 that night he told Mary Harrison, who lived with Ce Ce at 825 Calhoun Drive, that Ce Ce was ready to go home. He and Ce Ce then left, but Miss Harrison did not return home until 2:00 in the morning of May 17. When she arrived, she found that the house had been ransacked, the bathroom and nearby rooms were covered with blood, and Ce Ce's dead body was in the bathtub. She had received skull fractures and brain hemorrhage caused by being beaten with a hard object; she had been scalped with a knife; and she had suffered numerous other wounds. Near the house at 825 Calhoun Drive, police officers found two brick fragments that fit together to form a single brick. The bricks were stained with a reddish material which was examined and found to be human blood.

At 3:45 a.m. on 17 May 1973 police officers went to defendant's house trailer in the Brookwood Trailer Park. They found that it had burned down and defendant was not there. They went to defendant's mother-in-law's house, arrested him there, and brought him to the police station. The police officers washed defendant's feet, and when the material washed off was examined, it was found to contain human blood. Defendant's fingerprints were taken, and they were found to be identical to some

State v. Young

latent fingerprints found on a bloody spray can in Ce Ce's house. An inked impression of defendant's footprint was taken, and it proved to be identical in size and appearance to the bloody footprints found on the floor in Ce Ce's house.

One of the police officers who discovered that defendant's trailer had burned down also observed defendant's car and noticed that there were reddish stains, which appeared to be blood, in and around the door and near the door handles and bumper. He called a wrecker and had the car towed to a garage. At the garage, the car was searched and the floor was cleaned with a vacuum cleaner. An expert forensic chemist examined the sweepings from the vacuum cleaner and found that they contained minute brick scrapings. He determined that these scrapings probably came from the bloodstained brick found near Ce Ce's house.

At the police station defendant was given the *Miranda* warnings, including the warning that anything he said could be used against him, and was interrogated by W. A. Newsome of the Fayetteville police department. He made two lengthy statements. Before making the first statement, he requested that it be kept confidential, and Newsome agreed. The second statement was dictated to a secretary and defendant signed it after the secretary typed it up. In both statements defendant confessed to the killing of Ce Ce Kvist. He said that after he took Ce Ce home from the Frontier Lounge, they had an argument and he beat her to death with a brick. The first statement contained additional material relating to certain unpleasant details of defendant's personal life. The first statment will hereinafter be referred to as the "confidential statement," and the second statement as the "signed confession."

The State introduced defendant's signed confession at the trial, and a voir dire hearing was held to determine whether it was admissible in evidence. While cross-examining Officer Newsome on voir dire, counsel for defendant asked a number of questions about the confidential statement. The court held that the signed confession was admissible. Subsequently, on rebuttal after defendant had testified, the State introduced the confidential statement.

Defendant testified that he did not kill Ce Ce and that his signed confession was false. He stated that after taking Ce Ce to her house on May 16, he left and began driving home. On the

way he realized that he had left his glasses at Ce Ce's house, and he turned around and drove back to pick up the glasses. When he came back to Ce Ce's house he found her there dead.

The jury found defendant guilty of second degree murder. From the court's judgment imposing a prison term of 30 years, defendant appealed.

*Attorney General Morgan, by Associate Attorney John R. Morgan, for the State.*

*Smith & Geimer, P.A., by Kenneth Glusman, for defendant appellant.*

BALEY, Judge.

[1]   Defendant contends that the police acted illegally in seizing his car on 17 May 1973, and that the brick scrapings and other items of evidence found in the car should not have been admitted. This contention cannot be upheld. When police officers discover evidence of a crime in plain view, without the necessity of a search, they may seize the evidence without obtaining a search warrant. *Coolidge v. New Hampshire,* 403 U.S. 443 (1971) ; *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393; *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *State v. Fry,* 13 N.C. App. 39, 185 S.E. 2d 256, *cert. denied and appeal dismissed,* 280 N.C. 495, 186 S.E. 2d 514. In this case defendant's car was in plain view when the police officers went to Brookwood Trailer Park to find defendant. A murder had been committed; defendant was the last person seen with the victim; defendant's trailer had just burned down under the most suspicious circumstances; and defendant's car had blood on the door handles and bumper. Clearly, the officers were justified in concluding that the car constituted evidence of a crime and should be seized.

In *Coolidge v. New Hampshire, supra,* the Supreme Court held that the "plain view" rule does not apply unless the police have a right to be at the place where the evidence is discovered. Here the officers went to defendant's premises looking for him for interrogation concerning a brutal murder when he was a logical suspect, and they had a right to be on the premises and seize any evidence in plain view. The bloodstained car was easily visible from the street, front entrance, or other portions of defendant's premises which were open to the public. *Cf. Smith v. VonCannon,* 283 N.C. 656, 197 S.E. 2d 524. The seizure

was inadvertent, since the officers were intending to look for defendant rather than to search for evidence. The items found in the car were properly admitted into evidence.

[2]   Defendant assigns as error the admission in evidence of the confidential statement which he made to Officer Newsome. This statement concerned certain information about his personal life which was not mentioned in the signed confession, but this information did not relate to the guilt or innocence of the defendant and was not of sufficient significance to have affected the verdict of the jury. The signed confession which the trial court found to be freely and voluntarily made was admitted into evidence, and its admissibility is not challenged on this appeal. The additional information in the confidential statement bears primarily on the issue of premeditation and deliberation—an issue which the jury resolved in the defendant's favor. We find no error in admission of the alleged confidential statement.

[3]   Defendant argues that the trial court erred in overruling his objection to certain remarks made by the district attorney in arguing the State's case to the jury. However, "the argument of counsel must be left largely to the control and discretion of the presiding judge." *State v. Westbrook*, 279 N.C. 18, 39, 181 S.E. 2d 572, 584, *vacated and remanded on other grounds*, 408 U.S. 939; *accord, State v. Seipel*, 252 N.C. 335, 113 S.E. 2d 432. In this case the district attorney's remarks were not of such an inflammatory character as to form the basis for prejudicial error, and the trial court did not abuse its discretion in allowing him to proceed with his argument.

Defendant has brought forward a number of other assignments of error concerning the admission or exclusion of evidence, and there may have been instances when the court erred in either admitting or excluding some evidence of minor probative weight. We have carefully examined each of the assignments and are of the opinion that the action of the trial court, if error, could not have affected the outcome of the trial. For example, the testimony offered by defendant to account for the presence of the brick scrapings in his car was perhaps relevant and admissible, but its exclusion could not have affected the jury's verdict.

The evidence of defendant's guilt in this case is overwhelming. Ce Ce Kvist was killed by being beaten with a brick, and defendant had been in possession of the brick which killed her.

He was the last person seen with Ce Ce, and he was found a few hours after the killing with human blood on his feet. His latent fingerprints, and his bloody footprints, were found at the scene of the crime. Furthermore, defendant made a complete and detailed confession of the crime. In view of this very strong evidence, it is totally unlikely that defendant would have been acquitted, or convicted only of manslaughter, if the trial court had ruled correctly on all evidentiary questions presented to it. Not every error relating to the admission and exclusion of evidence requires a new trial. *State v. Rainey,* 236 N.C. 738, 74 S.E. 2d 39; 1 Stansbury, N. C. Evidence (Brandis rev.), § 9. When error is harmless beyond a reasonable doubt, defendant is not entitled to a reversal. *Chapman v. California,* 386 U.S. 18 (1967); *State v. Jones,* 280 N.C. 322, 185 S.E. 2d 858; *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677.

Although defendant has not received a perfect trial, he has received a fair one. The investigation of the case was thorough and the presentation of the State's evidence complete and convincing. The defendant was well represented by counsel, and his defense was fully documented for the jury. Except as to the issue of premeditation and deliberation, the jury believed and accepted the State's version of the facts, and accordingly they convicted defendant of second degree murder. Defendant has not shown the existence of any prejudicial error.

No error.

Judges CAMPBELL and HEDRICK concur.