STATE OF NORTH CAROLINA v. CHARLES JAMES MITCHELL

No. 50

(Filed 3 June 1980)

### 1. Searches and Seizures § 34— seizure of car in plain view

A car reasonably believed to be the fruit, instrumentality or evidence of a crime can be seized whenever found in plain view.

### 2. Searches and Seizures § 34— search and seizure of car in plain view —probable cause —exigent circumstances

Officers had probable cause to believe that a white Pinto car had been used by defendant in a bank robbery and that the vehicle itself, particularly its right rear tire, would aid in the apprehension or conviction of defendant for armed robbery, and the warrantless seizure of the vehicle was lawful under the plain view doctrine, where officers knew that an old model white Pinto car had been used in recent robberies of a convenience store and a bank, that a man whose description matched that of defendant was involved in both robberies, and that defendant drove an old model white Pinto; officers also knew that tire impressions made in an area where such a Pinto had been seen parked prior to the bank robbery showed that the right rear tire had a distinct type tread with hexagons on it; on the day the seizure occurred, officers received information that defendant might be living at a certain address; officers proceeded to that address and upon arrival saw an old model Pinto parked in plain view at the rear of the house; defendant was not in the house, and the owner of the house indicated that the Pinto belonged to defendant and that if the car was involved in any trouble the officers were free to take it away; and upon examining the Pinto, officers discovered that the right rear tire was different from the others and had hexagons on its tread pattern. Furthermore, the circumstances which gave officers probable cause to seize the car as criminal evidence also gave them probable cause to search the interior, and exigent circumstances resulting from the fact that defendant was still at large and could have driven the car away gave the officers the right to make a warrantless search of the car at the scene or to seize the car and search it at the station house.

### 3. Searches and Seizures § 33— plain view rule —inadvertent discovery

Even if "inadvertent discovery" is required for a warrantless seizure of evidence of crime when the evidence is in plain view of an officer who has a right to be in a position to have that view, which question is not decided, officers' discovery of a white Pinto allegedly used in two robberies was inadvertent where officers went to a residence to look for defendant; the officers had no prior knowledge that a white Pinto belonging to defendant would be parked at the residence; and only upon inspecting the car and being told that it belonged to defendant did the officers develop reason to believe that the Pinto before them was the one used by defendant in the two robberies in question.

APPEAL by the State from order of *Brewer, J.*, 21 May 1979 Criminal Session, CUMBERLAND Superior Court. The order was entered *"nunc pro tunc"* on 29 June 1979.

Defendant is charged in a bill of indictment, proper in form, with the armed robbery of First-Citizens Bank and Trust Company at 2621 Raeford Road, Fayetteville, North Carolina, on 22 January 1979. The bill alleges that defendant took and carried away the sum of $9,179 in United States currency.

Prior to trial, defendant filed a motion to suppress certain evidence on the ground that it had been illegally and unconstitutionally obtained. The motion was heard by Judge Brewer in the absence of the jury. The facts hereinafter set out are gleaned from the motion, affidavits in support thereof, and testimony elicited on a voir dire hearing.

On 16 January 1979 a Quik Stop store was robbed and a white Pinto car was used in that robbery. An informant told Detective Maxwell by telephone that the day Quik Stop was robbed the informant had seen Kenneth Sanders and another black male he knew as Mitchell, who drove a white older model Pinto, sitting around counting a small amount of money in tens, fives, ones and a single twenty-dollar bill. The informant's description of "Mitchell" matched the description of one of the Quik Stop robbers.

On 22 January 1979, the First-Citizens Bank was robbed, allegedly at gunpoint. The description of these robbers matched the description of the Quik Stop robbers. The clothing worn by the robbers was similar. An FBI agent checked the area where witnesses had seen an older model white Pinto parked near the bank just prior to the robbery. Tire tracks were discovered and the impression of the right rear tire showed a distinct type of tread—similar to a Michelin-type tread. The tread had hexagons in it. A photo of the tire impression was made.

On 26 January 1979, Detective Maxwell received information that Mitchell might be living in Red Springs at Route 4, Box 185L. He and another officer went to that address that afternoon. Upon arrival, they saw an old model white Pinto parked at the rear of the house. Mr. Mitchell was not there. One of the residents originally stated she didn't know Charles Mitchell but then admitted she did know him but did not know his whereabouts. With permission of Walter Norris, owner of the

house and lot where the white Pinto was parked, the officers searched the house, the outbuildings and the white Pinto. They observed at first glance that the right rear tire of the old white Pinto was different from the others, was a radial-type tire with hexagons in the tread pattern. The officers were informed by Walter Norris that the Pinto belonged to Charles Mitchell; that it was on his property; that he did not give Mr. Mitchell permission to leave it there; that it had been there since the 23rd of January; that he consented for the officers to look at the car and also to go into his house; that if the car was involved in any trouble he didn't want it in his yard; that the officers had his permission to take it away. The white Pinto was then seized.

The SBI laboratory compared the right rear tire from Mitchell's old white Pinto with photographs of the tracks left in the dirt by an old white Pinto which had been seen parked near the First-Citizens Bank on the day of the robbery. That comparison indicated the tire taken from the Mitchell Pinto had the same approximate size, shape, tread design and amount of wear as the tire which had left the tire track in the dirt at the bank. Although there was an insufficient number of distinct characteristics to permit a positive identification, it was the examiner's opinion that the tire taken from the Mitchell Pinto could have made the tire track impression found in the dirt near the bank.

Defendant testified on voir dire that his sister, who lives in Tennessee, gave him the white Pinto in August 1978 and he drove it to Fort Bragg where he is stationed as a member of the military forces; that he used the car until December 1978 and parked it at the home of Mr. Norris, Route 4, Box 185L, Red Springs, North Carolina; that the daughter of Mr. Norris was his girl friend at that time and they are now married; that the old Pinto was in a bad state of repair, did not run over 30 miles an hour, and he simply left it at the Norris home. Defendant further stated that he never gave anyone consent to tow the car away. He stated that he drove the car through January 1979 and let others drive it; that when the Tennessee license tags expired he took them off and parked the car at the Norris home. When he discovered the car was gone, he inquired of the sheriff and the police as to its whereabouts and was thereupon taken into custody.

At the close of the voir dire hearing, Judge Brewer found: (1) That a 1971 Ford Pinto which defendant had been operating for several months was seized by the officers pursuant to a search of the property of Walter Norris; (2) that defendant voluntarily placed the Pinto at the Norris residence without obtaining a specific permit to do so but he had implied permission to leave the vehicle there; (3) that initial examination of the Pinto at the Norris residence by the officers, based upon the consent of Mr. Norris, was in all respects proper and did not constitute an impermissible search; (4) that at the time the officers viewed the Pinto they had no probable cause to believe that the vehicle constituted contraband, had been utilized in any illegal activity, or constituted evidence of any crime; (5) that descriptions of a Pinto observed at the scene of criminal offenses and the appearance of the Mitchell Pinto, including its tires, at the Norris residence on the day of the search and seizure lacked sufficient similarity to constitute probable cause for the seizure of the vehicle; and (6) that the 1971 Ford Pinto and the accompanying tires were seized by the officers incident to the search.

Based upon the above findings, Judge Brewer concluded as a matter of law that the seizure of the Mitchell Pinto and the tire later removed from the right rear wheel constituted an illegal seizure in that (a) the consent of the owner was not obtained and Walter Norris had no proprietary interest in the vehicle sufficient to enable him to give valid permission for that seizure; and (b) the search of the vehicle on the Norris premises, although valid, did not give rise to sufficient probable cause to justify the seizure. Judge Brewer thereupon allowed defendant's motion to suppress the 1971 Pinto together with any and all testimony concerning it, the right rear tire and all testimony concerning a comparison of said tire with a tire track impression found in the dirt near the bank. The State took exception and appealed to this Court pursuant to G.S. 15A-979(c).

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State appellant.*

*Gerald Beaver, attorney for defendant appellee.*

HUSKINS, Justice.

Did the trial court err in granting defendant's motion to suppress the physical evidence on the ground that there was no prob-

able cause for the warrantless search and seizure of defendant's old white Pinto and its right rear tire? For reasons which follow, we answer in the affirmative.

[1]  It is well settled that evidence of crime falling in the plain view of an officer who has a right to be in a position to have that view is subject to seizure and may be introduced into evidence. *State v. Mathis,* 295 N.C. 623, 247 S.E. 2d 919 (1978); *State v. Jones,* 295 N.C. 345, 245 S.E. 2d 711 (1978), and cases cited therein. A car reasonably believed to be the fruit, instrumentality or evidence of a crime can be seized whenever found in plain view. *Accord, North v. Superior Court,* 8 Cal. 3d 301, 104 Cal. Rptr. 833, 502 P. 2d 1305 (1972); *State v. Young,* 21 N.C. App. 369, 204 S.E. 2d 556, *cert. denied,* 285 N.C. 595 (1974). *See generally,* W. LaFave, Search & Seizure § 7.3(a) (1978).

[2]  Neither party disputes the finding of the trial court to the effect that "the initial examination of the vehicle at the residence by law enforcement officers based upon the consent of the owner of the residence, was in all respects proper and did not constitute a constitutionally impermissible search." This finding is supported by competent evidence and establishes beyond dispute that the white Pinto was in the plain view of officers who had a right to be in the place where the view was taken. The only issue in dispute is whether the officers had probable cause to believe that the white Pinto had been utilized in the commission of the armed robbery or itself constituted evidence of the crime. If probable cause existed, then the warrantless seizure was legal since the vehicle was unquestionably in the plain view of the officers.

Probable cause to seize, in the setting of this case, may be defined as a reasonable ground to believe that the object seized will aid in the apprehension or conviction of the offender. *State v. Riddick,* 291 N.C. 399, 230 S.E. 2d 506 (1976). " 'To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith. . . . The existence of "probable cause" . . . is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular cir-

cumstances and the particular offense involved.'" *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971), quoting 5 Am. Jur. 2d, Arrest §§ 44, 48.

Here, the totality of the circumstances would lead a reasonably prudent man to believe that the old white Pinto had been used by defendant in the bank robbery and that said car, particularly its right rear tire, would aid in the apprehension or conviction of defendant Mitchell for armed robbery. Prior to viewing the vehicle in question, the officers were aware that a Quik Stop store had been robbed on 16 January 1979, and a First-Citizens Bank had been robbed on 22 January 1979; that an old model white Pinto car had been used in both robberies; that a man whose description matched that of defendant Mitchell had been involved in both robberies; that defendant Mitchell drove an old model white Pinto. The officers also knew that tire impressions had been made in the area where an older model white Pinto had been seen parked prior to the bank robbery. The impressions of the right rear tire had shown a distinct type tread with hexagons in it. On the day the seizure occurred, the officers received information that Mitchell might be living in Red Springs at Route 4, Box 185L. The officers proceeded to that address. Upon arrival they saw an old model white Pinto parked at the rear of the house. Mr. Mitchell was not at the house. The owner of the house indicated that the Pinto belonged to Mitchell; that if the car was involved in any trouble the officers were free to take it away. Upon examining the Pinto, the officers discovered that the right rear tire was different from the others and had hexagons in its tread pattern.

The above circumstances would lead a reasonably prudent officer to believe that the white Pinto had been used by Mitchell in two robberies and that the vehicle itself constituted criminal evidence which might lead to the apprehension and conviction of Mitchell. Given such probable cause, it follows that the warrantless seizure was legal, since the vehicle was unquestionably in plain view of the officers.

[3] The plurality opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022 (1971), expressed the view that the plain view doctrine was applicable only to the inadvertent discovery of incriminating evidence. Although he concurred in judgment, Justice Harlan declined to join in that portion of the

plurality opinion. 403 U.S. at 491. The dissenting justices express-
ly disagreed with the plurality on this point. 403 U.S. at pp
505-510, 522. Since the justices were equally divided on this point,
it follows that the "inadvertent discovery" restriction on the plain
view rule does not have the force of precedent and is not binding
on the states. *Compare Cardwell v. Lewis*, 417 U.S. 583, 41 L.Ed.
2d 325, 94 S.Ct. 2464 (1974), where another plurality upheld a
plain view seizure of evidence, the discovery of which was not
inadvertent. *See generally, North v. Superior Court, supra;* W.
LaFave, *supra*, § 7.3(a). In this posture we find it unnecessary to
reach or decide whether "inadvertent discovery" is required for a
warrantless seizure of evidence of crime when the evidence is in
plain view of an officer who has a right to be in a position to have
that view. Nonetheless, we note parenthetically that in the in-
stant case the discovery of the white Pinto by the officers was
truly inadvertent. The officers had no prior knowledge that a
white Pinto belonging to defendant Mitchell would be parked at
the Norris residence. Only upon inspecting the car and being told
that it belonged to Mitchell, did the officers develop a reason to
believe that the Pinto before them was the one used by Mitchell
in the two robberies under investigation. Thus, *Coolidge* is
distinguishable from the instant case. In *Coolidge*, the police
knew far in advance the location of the evidence and intended to
seize it.

[2]    Here, the circumstances which gave the officers probable
cause to seize the car as criminal evidence also gave them prob-
able cause to search the interior of the car for further evidence of
the bank robbery. Moreover, the exigent circumstances gave the
officers the right to make a warrantless search of the car at the
scene. "[A] warrantless search of a vehicle capable of movement
may be made by officers when they have probable cause to search
and exigent circumstances make it impracticable to get a search
warrant." *State v. Allen*, 282 N.C. 503, 194 S.E. 2d 9 (1973).
Although there was evidence tending to show the Pinto was in a
bad state of repair, there was no indication that it was incapable
of movement. *See State v. Mathis, supra.* Mitchell was still at
large and could have driven the car away while a warrant was be-
ing obtained. *See, e.g., United States v. Farnkoff*, 535 F. 2d 661
(1st Cir. 1976); *Love v. State*, 487 S.W. 2d 677 (Tenn. App. 1972);
W. LaFave, *supra*, § 7.2 at 527. If exigent circumstances justify a

State v. Mitchell

warrantless search, it matters not that the vehicle is parked rather than moving at the time it is located by police. *See, e.g., Haefeli v. Chernoff,* 526 F. 2d 1314 (1st Cir. 1975); *Carlton v. Estelle,* 480 F. 2d 759 (5th Cir.), *cert. denied,* 414 U.S. 1043 (1973). Once the right to make a warrantless search obtained, the officers could search the Pinto immediately or could *seize* it and search it at the station house. *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975 (1970); *State v. Allen, supra.* In the instant case the officers chose the latter course. Thus, seizure of the Pinto could also be lawfully made for the purpose of conducting a warrantless search of the vehicle at the station house.

Prior to removing the Pinto from the premises, the officers returned briefly to the station house, borrowed a camera, returned to the premises and photographed the car. Suffice it to say that by the time the officers returned to the station house to borrow a camera, it was no longer necessary to obtain a warrant since the right to make a warrantless search and seizure had already arisen. *See generally, Chambers v. Maroney, supra; State v. Allen, supra.* Moreover, defendant was still at large and could have removed the car from the premises. Thus, it was imperative that the officers quickly return to the premises where the car was parked.

The trial court's findings that when the officers viewed the Mitchell Pinto in Red Springs they had no probable cause to believe that the vehicle was contraband or had been used in any illegal activity are not supported by the evidence. The trial court's conclusion that the Mitchell Pinto and its right rear tire were illegally seized is erroneous.

For the reasons stated the order appealed from is reversed. The case is remanded to Cumberland Superior Court for trial on the merits as provided by law and in accord with this opinion.

Reversed and remanded.