STATE OF NORTH CAROLINA v. HERBERT WAYNE CHAVIS

No. COA98-1202

(Filed 17 August 1999)

### 1. Jury— juror related to district attorney staff member— mistrial denied

The trial court did not abuse its discretion in a prosecution for first-degree murder, assault and cocaine possession by denying defendant's motion for a mistrial where it was learned during the sentencing phase that the jury foreperson and the district attorney's witness coordinator were related. The juror stated that she could be fair even though she knew people in law enforcement and the court found that the witness coordinator had had no contact with the juror for at least ten years, that she was not sure that the juror recognized her, and that they had no contact at all regarding this case.

### 2. Jury— juror related to district attorney staff member—not revealed by prosecutor—sufficiency of court's inquiry

Defendant was not denied his due process rights where it was revealed during the sentencing proceeding for first-degree murder that the jury foreperson was related to the district attorney's witness coordinator and the trial court denied defendant's motion for a mistrial without conducting a voir dire of the juror. The trial court determined after questioning the witness coordinator that further inquiry was unnecessary as there was no showing that the juror concealed material information or demonstrated bias. It was not clear why the prosecutor did not reveal the information until the sentencing phase, but no impropriety was ascribed to the delay.

### 3. Homicide— first-degree murder—sufficiency of evidence

The trial court did not err by denying defendant's motions to dismiss a first-degree murder charge based upon premeditation and deliberation or to set aside the conviction where it could be inferred by defendant's actions that he deliberately engaged in a confrontation using deadly force.

### 4. Homicide— felony murder—assault—store clerk protected by bullet resistant glass

The trial court did not err by denying defendant's motions to dismiss a first-degree murder charge based upon felony murder

arising from an assault where defendant fired at a store clerk who was protected by bullet resistant glass and then shot and killed a customer. Despite the bullet resistant glass, the store clerk was placed in apprehension and fear for his safety and other people in the store were clearly terrified; whether on transferred intent or shooting directly at the victim, the evidence of assault was sufficient.

**5. Criminal Law— consolidation of offenses—murder, assault, narcotics**

The trial court did not err by refusing to dismiss charges of possession of cocaine and possession of drug paraphernalia in a prosecution which included changes of assault and murder where, although defendant argued that the possession was a misdemeanor, possession of any amount of cocaine is felony and N.C.G.S. § 7A-271 gives a superior court jurisdiction to try a misdemeanor which may be properly consolidated for trial with a felony. The trial court here properly consolidated these charges.

**6. Grand Jury— jurisdiction—offenses outside county**

A grand jury had jurisdiction to indict defendant for cocaine and drug paraphernalia offenses in Randolph County where defendant was apprehended in Chatham County after he attempted to evade police in a high speed chase from Randolph County, defendant's car (in which the contraband was found) was continuously in sight of an officer from the time he spotted it until it crashed, and the car was placed in the custody of the police when it was returned to Randolph County.

**7. Narcotics— constructive possession—articles in car**

There was sufficient evidence of possession of cocaine and drug paraphernalia where the contraband was found in the back of defendant's car under a seat where a passenger was sitting. Even if defendant was not in exclusive possession of the car, there were ample other incriminating circumstances from which constructive possession can be inferred.

**8. Arrest— high speed chase—seizure in Chatham County— appearance before Randolph County magistrate**

There was no error in a prosecution for first-degree murder, assault, and possession of narcotics where defendant was seized in Chatham County by a Chatham County officer following a high speed chase from Randolph County, immediately turned over to a

Randolph County officer, and brought before a Randolph County magistrate. N.C.G.S. § 15A-501.

**9. Search and Seizure— high speed chase—car returned to originating county for search**

The was no error in a prosecution for possession of cocaine and paraphernalia found in defendant's car following a high speed chase from Randolph to Chatham County where the court concluded that officers had probable cause to search the car at the site of the crash in Chatham County. The fact that they chose to return the car to Randolph County and then obtain a search warrant did not negate their authority to make a warrantless search at the scene.

**10. Evidence— cross-examination of witness—prior offense excluded**

There was no error in a prosecution for murder, assault, and possession of narcotics arising from an incident at a food mart where the court prevented cross-examination of the store clerk about an alleged prior sexual offense. The State had asserted in pre-trial proceedings that there were no plea arrangements with the clerk and the court excluded the evidence for lack of relevance and undue prejudicial effect.

**11. Confessions and Incriminating Statements— out-of court statement—not introduced—no prejudice**

There was no prejudicial error where defendant contended that his out-of-court statement to officers was taken in violation of his Miranda rights, but the State never introduced the statement into evidence.

Appeal by defendant from judgment entered 12 June 1997 by Judge W. Douglas Albright in Randolph County Superior Court. Heard in the Court of Appeals 10 June 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Irving Joyner for defendant-appellant.*

WALKER, Judge.

On 19 May 1997, defendant was convicted of first degree murder under the theories of premeditation and deliberation and felony mur-

der and possession of cocaine, possession of drug paraphernalia, and assault with a deadly weapon with intent to kill. He was sentenced to life imprisonment for the first degree murder conviction and he received a concurrent two-year sentence in a consolidated judgment for the offenses of possession of cocaine and possession of drug paraphernalia. Judgment was arrested on the conviction for assault with a deadly weapon with intent to kill.

The State's evidence tended to show the following: Charles Hicks was working at the Servco gas station and food mart (the store) on Highway 64 in Asheboro, North Carolina, on 7 August 1994. Debbie Burke, Tina Davis, and Charles Hicks' wife, Kathy Dianne Hicks (Dianne Hicks), came into the store together. Davis went to use the telephone and Burke and Dianne sat in a booth in the eating area. Rhonda Brewer was also in the store, along with her son and nephew.

At approximately 1:30 a.m., a black Cadillac pulled up to the gas pumps and a woman, later identified as Racine Lawson, got out of the car and came into the store to pay for the gas and buy a drink. She left the store and then came back and asked Charles Hicks if he had "dry gas" or "white gas." Charles Hicks told her that he did not know what she was talking about, and the woman went back to the car.

Then, defendant came into the store carrying a gun, cursing, and asking about "white gas." Charles Hicks told him that he did not know what he was talking about. Defendant said there was water in the gas. Defendant yelled profanities at Charles Hicks and then raised the gun and shot at Charles Hicks who was in a cash register booth, which had visible bullet-resistant glass all the way across the front. The glass was struck at least twice by bullets. Defendant then turned around and fired the gun in the direction of the people sitting in the booths. One of the bullets struck Dianne Hicks who died from the gunshot wound. Charles Hicks called 911 from a phone located behind him. Defendant then drove away in the car. A total of four shots were fired.

Sergeant Billy Maness of the Asheboro Police Department was three to four blocks east of the store at 1:30 a.m. when he saw a black Cadillac speeding at an estimated 70 miles per hour through a 45-mile-per-hour zone. He pulled behind the car and noticed that it did not have a license plate. Sergeant Maness turned on his lights and sirens; however, the car did not pull over. He chased the car on Highway 64 and continued through Ramseur and Siler City, with offi-

cers from other jurisdictions getting involved. A chase took place at speeds up to 100 miles per hour. Near Pittsboro, two Pittsboro police cars parked parallel to each other in order to force defendant to stop. Defendant hit both of the cars and crashed into a ditch.

Defendant and his female passenger, Ms. Lawson, were arrested and placed in a Chatham County police officer's car until two Asheboro officers arrived at the scene and transported them back to Asheboro. Sergeant Maness stayed with the car at the scene until it was towed to Asheboro where it was secured.

A search of defendant's car produced a .380 pistol, a 12-gauge shotgun along with ammunition, a wallet with nearly $4,000 in cash, a bag containing $70,000 in U.S. currency, as well as vehicle sales and insurance documents for the car in defendant's name. A box of Kleenex was found under the passenger seat, and at the bottom of the box was a substance later identified as cocaine. A large black travel bag, found in the back floorboard area on the passenger side, contained numerous items including two folding knives, a set of Digital brand scales, a glass smoking pipe of a type used for crack cocaine and later shown to contain a residue of cocaine, an additional .380 pistol, and rolling paper.

An autopsy established that Dianne Hicks died of a gunshot wound to the head. The bullets recovered from the scene and the bullet from Dianne Hicks were consistent with bullets fired from a .380 semi-automatic pistol.

The defendant presented no evidence at trial. On appeal he contends: (1) the trial court erred when it failed to declare a mistrial after finding out that the jury foreperson was related to a member of the district attorney's office; (2) the trial court erred when it failed to set aside defendant's conviction for first degree murder; (3) the trial court erred by refusing to dismiss the possession of drugs and possession of drug paraphernalia charges and convictions; (4) the seizure and transfer of defendant and his car from Chatham County to Randolph County without benefit of process resulted in violations of his statutory and constitutional rights; (5) the trial court erred when it prevented defendant from cross-examining Charles Hicks concerning a criminal charge; (6) defendant did not make a voluntary, knowing, and intelligent *Miranda* waiver and his out-of-court statement should have been suppressed; and (7) the trial court failed to insure the jury selection procedures were lawfully administered.

**[1]** Defendant first contends the trial court should have declared a mistrial based upon information that a juror was related to a member of the district attorney's staff. While the jury was deliberating during the sentencing phase, it was revealed that the jury foreperson, Dawn Cox, and the district attorney's witness coordinator, Sandra Baucom, were related. The trial court conducted a *voir dire* during which Ms. Baucom testified that her mother's brother was the father of Juror Cox's father. After conducting the *voir dire*, the trial court made the following findings and conclusions:

> 2. . . . Witness Coordinator Baucom's mother's brother is the father of Foreperson Cox's father.
>
> . . .
>
> 4. Witness Coordinator Baucom has had no contact for at least ten years with Jury Foreperson Cox.
>
> 5. Indeed, Witness Coordinator Baucom did not know she was a Cox and did not even know her last name but did recognize her when she appeared for jury service. Witness Coordinator Baucom is not sure Foreperson Cox even recognized her.
>
> 6. There has been no contact of any sort or description with regard to this case between the two, and no conversation of any sort of description has taken place between the two regarding the case.
>
> . . .
>
> 8. The Court cannot perceive or does not find anything procedurally prejudice at this junction. This information was disclosed as quickly as the Court received it to the end that it would be spread upon the record and made available to the defendant and the defendant's counsel.

The trial court then denied defendant's motion for a mistrial.

The State contends that based on Ms. Baucom's testimony, the probability is that Juror Cox did not know, or did not recall, that her cousin was employed by the district attorney's office. The State also points out that during jury selection, Juror Cox had stated that she knew two Asheboro Police Department employees. In addition, she stated that she knew a couple connected with the Randolph County Sheriff's Department but that any acquaintance she had with these

law enforcement agencies would not affect her ability to make a fair decision.

The trial court must grant a mistrial when conduct takes place inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant. *State v. Brown*, 315 N.C. 40, 56, 337 S.E.2d 808, 821 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986). However, whether to grant a motion for a mistrial is at the sound discretion of the trial court and its ruling will not be reversed absent a showing of an abuse of discretion. *State v. Sanders*, 347 N.C. 587, 595, 496 S.E.2d 568, 573 (1998).

Misconduct by a juror must be determined by the facts and circumstances of each case, and "[t]he circumstances must be such as not merely to put a suspicion on the verdict. . .but that there was in fact misconduct." *State v. Rutherford*, 70 N.C. App. 674, 677, 320 S.E.2d 916, 919 (1984), *disc. review denied*, 313 N.C. 335, 327 S.E.2d 897 (1985) (*quoting State v. Johnson*, 295 N.C. 227, 234, 244 S.E.2d 391, 396 (1978)). "The determination of the existence and effect of jur[or] misconduct is primarily for the trial court whose decision will be given great weight on appeal." *State v. Bonney*, 329 N.C. 61, 83, 405 S.E.2d 145, 158 (1991).

A party moving for a new trial based upon misrepresentation by a juror during *voir dire* must show the following:

> (1) the juror concealed material information during *voir dire*; (2) the moving party exercised due diligence during *voir dire* to uncover the information; and (3) the juror demonstrated actual bias or bias implied as a matter of law that prejudiced the moving party.

*State v. Buckom*, 126 N.C. App. 368, 380, 485 S.E.2d 319, 327, *cert. denied*, 522 U.S. 973, 139 L. Ed. 2d 326 (1997). The record shows that Juror Cox, when questioned during *voir dire*, stated that even though she knew people in law enforcement, she could still be fair. The trial court found from Ms. Baucom's testimony that she had no contact with Juror Cox for at least ten years and that she was unsure whether Juror Cox recognized her. Also, the two had no contact at all regarding this case.

**[2]** Defendant further argues that he was denied his due process rights because the trial court did not make an adequate inquiry since it failed to conduct a *voir dire* of Juror Cox. Defendant also asserts that the prosecutor engaged in improper conduct by failing to reveal

information about the relationship of Ms. Baucom and Juror Cox. The record is unclear as to why the prosecutor did not reveal this relationship until the sentencing phase of the trial. Because we note that the prosecutor promptly notified the court during trial that another juror's spouse had called him to advise that the prosecutor and the juror were distantly related, we do not ascribe any impropriety to the delay raised here. Nevertheless, immediate disclosure of the relationship between Ms. Baucom and Juror cox would have allowed the trial court to address the issue promptly. As to the adequacy of the court's inquiry, "due process requires that a defendant have 'a panel of impartial, indifferent jurors.'" *State v. Williams*, 330 N.C. 579, 583, 411 S.E.2d 814, 817 (1992) (*quoting Rutherford*, 70 N.C. App. at 677, 320 S.E.2d at 919). It is the responsibility of the trial court to make investigations "as may be appropriate" to determine whether misconduct has occurred and whether it has prejudiced the defendant. *Id.* After Ms. Baucom was questioned concerning her relationship with Juror Cox, the trial court determined it was unnecessary to hear from Juror Cox or to conduct further inquiry as there was no showing that she concealed material information or demonstrated bias. We conclude the trial court did not err in failing to examine Juror Cox and did not abuse its discretion in denying defendant's motion for a mistrial.

**[3]** Defendant contends the trial court erred in denying his motion to dismiss the first-degree murder charge and in failing to set aside the first-degree murder conviction under the theories of premeditation and deliberation and felony murder. It is well-settled that when considering a motion to dismiss for the insufficiency of the evidence, the trial court must examine the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). The motion to dismiss must be denied if the evidence, when viewed in the light most favorable to the State, permits "a rational jury to find the existence of each element of the charged crime beyond a reasonable doubt." *State v. Warren*, 348 N.C. 80, 102, 499 S.E.2d 431, 443, *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998).

Here, the jury first found the defendant guilty of first-degree murder on the basis of malice, premeditation, and deliberation. "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Connor*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994), *cert. denied*,

522 U.S. 876, 139 L. Ed. 2d 134 (1997). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836. Deliberation does not require a mind free of passion, but merely one that has not been overcome by passion stimulated by sufficient provocation. *State v. Watson,* 338 N.C. 168, 178, 449 S.E.2d 694, 700 (1994), *cert. denied,* 514 U.S. 1071, 131 L. Ed. 2d 569 (1995). Both are usually proved by circumstantial evidence, and relevant factors include lack of provocation along with the defendant's actions and statements before and after the killing. *State v. Bruton,* 344 N.C. 381, 388, 474 S.E.2d 336, 341-42 (1996).

The evidence viewed in the light most favorable to the State shows that Charles Hicks advised Ms. Lawson that the store did not have "white gas" or "dry gas." After Ms. Lawson left, the defendant entered the store upset and asking about "white gas." He was mumbling, cursing, and carrying a gun. He engaged in a heated exchange with Charles Hicks and then raised his gun and fired. The first two shots were fired directly at Charles Hicks' head, but did not penetrate the bullet-resistant glass. Defendant then swung around and fired the gun toward the booth where Dianne Hicks was sitting. As a result, Dianne Hicks was killed. From this evidence it can be inferred by defendant's actions that he deliberately engaged in this confrontation by using deadly force. We find there was sufficient evidence to allow the jury to determine whether defendant was guilty of first-degree murder based on the theory of premeditation and deliberation.

**[4]** Defendant was also convicted of first-degree murder under the felony murder rule as a result of the underlying felony of assault with a deadly weapon with intent to kill. Specifically, defendant argues that he did not commit an assault on Charles Hicks since Charles Hicks was not placed in fear of bodily harm because he was protected by bullet-resistant glass.

A criminal assault can be shown by "an overt act or attempt, . . . with force and violence, to do some immediate physical injury to the person of another, which . . . must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *State v. McDaniel,* 111 N.C. App. 888, 890-91, 433 S.E.2d 795, 797-98 (1993). In addition, it can also be shown by a "show of violence" where the State "must demonstrate some show of violence by the defendant, accompanied by reasonable apprehension of immediate bodily harm or

injury on the part of the person assailed, which causes him to engage in a course of conduct which he would not otherwise have followed." *Id.*

The evidence was sufficient to establish that despite the fact that Charles Hicks was sitting behind bullet-resistant glass, he was placed in apprehension and fear for his safety as a result of a person, not known to him, engaging in a shooting spree in the store. In addition, all of the other people in the store were clearly terrified as they ran for cover when the shooting began. Charles Hicks testified he immediately called the police when defendant began shooting and he was "still nervous" hours after the incident. Whether on a transferred intent theory, where it is immaterial whether the defendant intended injury to the person actually harmed as long as he acted with the required intent to someone, or a theory that defendant shot directly at the victim, the State's evidence was sufficient to allow the jury to determine whether defendant committed the felony of assault with a deadly weapon with intent to kill and was therefore guilty of first-degree murder under the felony murder rule. *See State v. Locklear,* 331 N.C. 239, 245, 415 S.E.2d 726, 730 (1992).

[5] Defendant next argues the trial court erred in refusing to dismiss the charges of possession of cocaine and of possession of drug paraphernalia. We note at the outset that defendant states that possession of less than a gram of cocaine is a misdemeanor; however, N.C. Gen. Stat. § 90-95(d)(2) (Cum. Supp. 1998) clearly states that the possession of any amount of cocaine is a felony.

In support of his argument, the defendant asserts that with certain exceptions only the district court has jurisdiction to hear misdemeanors and that the grand jury should not have been permitted to indict him for misdemeanors. *See* N.C. Gen. Stat. § 7A-272(a) (Cum. Supp. 1998); N.C. Gen. Stat. § 7A-271(a) (1995). However, N.C. Gen. Stat. § 7A-271(3) (1995) gives a superior court jurisdiction to try a misdemeanor: "Which may be properly consolidated for trial with a felony under G.S. 15A-926." Here, the trial court determined the charges should be consolidated for trial and it ordered the following:

2. The offenses, however, are so connected in time and place that the evidence at the trial of one of the indictments would be competent and admissible at the trial of the others. The acts constituting the offenses in question were connected as continuing transaction. Indeed, the so-called "drug offenses" arise during the flight and concealment phase of the homicide case at issue.

3. The evidence in the drug cases fits into the proof of the capital offense in that these offenses arise during the flight or concealment phase of that offense, and arise substantially contemporaneously with the homicide charge. The offenses in question are not so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial to the defendant.

We find the trial court properly consolidated the charges and this assignment of error is overruled.

[6] Defendant also argues the grand jury was without authority to indict defendant for offenses which occurred outside of its jurisdictional borders pursuant to N.C. Gen. Stat. § 15A-628(b) and N.C. Gen. Stat. § 15A-631. Further, the State failed to present sufficient evidence to support the convictions for possession of cocaine and drug paraphernalia in Randolph County. At the conclusion of the State's evidence, defendant moved to dismiss the murder and assault charges. After the defendant announced he would not present any evidence, he renewed his prior motion to dismiss based on the insufficiency of the evidence. We conclude the defendant has properly preserved this argument for appeal.

In ruling on a motion to dismiss, the trial court is to consider the evidence in the light most favorable to the State. *State v. McKinney*, 288 N.C. 113, 117, 215 S.E.2d 578, 581 (1975). The evidence offered by the State showed that the defendant was apprehended in Chatham County only after he attempted to evade police in a high speed chase from Randolph County. Also, the State's evidence showed that from the time defendant's car was spotted by Sergeant Maness, it was continuously within his sight until it crashed. The car was then placed in the custody of the police when it was brought back to Randolph County. The defendant was properly in Randolph County and the evidence was sufficient to go to the jury on the question of whether the cocaine and drug paraphernalia were possessed in Randolph County.

[7] Defendant argues that he did not have exclusive possession of the car and that he cannot be deemed to have been in constructive possession of the cocaine and drug paraphernalia.

Under the theory of constructive possession, a person may be charged with possession of an item such as narcotics when he has both "the power and intent to control its disposition or use,"

*State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972), even though he does not have actual possession. *Id.* "Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *Id.* However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred. *State v. Brown*, 310 N.C. 563, 569, 313 S.E.2d 585, 589 (1984).

*State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989). Defendant asserts that he did not have exclusive possession of the car where the cocaine and drug paraphernalia were located since they were found in the back of the car and under the passenger's seat where Ms. Lawson was seated. Even if defendant was not in exclusive possession of the car, there were ample other "incriminating circumstances" from which constructive possession can be inferred. Defendant was both the owner and driver of the car. The cocaine found in the Kleenex box on the passenger side of the car was surrounded by other items belonging to the defendant, including his wallet and sales and insurance documents in his name. The black travel bag located in the back of the car which contained the drug paraphernalia also included a number of personal items including men's underwear and shaving items. Therefore, we find this assignment of error to be without merit.

[8] Next, defendant argues the "seizure and transfer" of him and his car from Chatham County "without benefit of process" violated his statutory and constitutional rights. Specifically, defendant contends that he should have been brought before a Chatham County magistrate pursuant to N.C. Gen. Stat. § 15A-501 since he was arrested by a Chatham County police officer. N.C. Gen. Stat. § 15A-501 (1997) states as follows:

Upon the arrest of a person, with or without a warrant, but not necessarily in the order hereinafter listed, a law-enforcement officer:

. . .

(2) Must, with respect to any person arrested without a warrant and, for purpose of setting bail, with respect to any person

arrested upon a warrant or order for arrest, take the person arrested before a judicial officer without unnecessary delay.

Defendant makes no argument that there was an "unnecessary delay." Instead, he contends that since he was arrested by a Chatham County police officer, he was required to be brought before a Chatham County magistrate. Defendant presents no authority to support this contention. Defendant was read his *Miranda* rights by a Chatham County police officer and was immediately turned over to Randolph County law enforcement at the scene. He was subsequently brought before a Randolph County magistrate who issued arrest warrants. Since the defendant was arrested in Chatham County solely because he was trying to evade police in a chase that began in Randolph County, he was properly brought before a Randolph County magistrate without "unnecessary delay."

[9] Defendant also argues that the search warrant for his car was not supported by probable cause. The trial court found and concluded that the officers had probable cause to search the car at the site of the crash. Defendant does not contend these findings and conclusions were erroneous or unsupported by the evidence. The fact that the officers chose to take the car back to Randolph County and then obtain a search warrant did not negate their authority to make a warrantless search and seizure of the car at the scene. *See State v. Mitchell*, 300 N.C. 305, 311-12, 266 S.E.2d 605, 609-10 (1980), *cert. denied*, 449 U.S. 1085, 66 L. Ed. 2d 810 (1981). Therefore, we find this assignment of error to be without merit.

[10] Defendant next contends the trial court erred when he was prevented from cross-examining Charles Hicks concerning an alleged sexual offense. He argues that if he had been able to elicit this information, Charles Hicks "would have been more vulnerable to intense cross-examination regarding these crimes, his bias, and credibility."

A defendant may ask questions of a State's witness concerning pending charges and possible "deals" or arrangements with the prosecution, for purposes of showing bias. *State v. Graham*, 118 N.C. App. 231, 237-38, 454 S.E.2d 878, 882, *disc. review denied*, 340 N.C. 262, 456 S.E.2d 834 (1995). However, the trial court has broad discretion in controlling the scope of cross-examination and such a ruling will not be disturbed absent abuse of discretion and a showing the ruling was so arbitrary it could not have been the product of a reasoned decision. *Jones v. Rochelle*, 125 N.C. App. 82, 85-86, 479

S.E.2d 231, 233, *disc. review denied*, 346 N.C. 178, 486 S.E.2d 205 (1997).

Here, in pre-trial proceedings, the State asserted that there were no plea arrangements with Charles Hicks concerning the pending charges of taking indecent liberties with a minor. At trial, defendant asked Charles Hicks about any "deals" or "arrangements" he had with the State. However, the trial court did not permit defendant to inquire into the details of the charges. The trial court specifically excluded this evidence on the grounds of lack of relevance pursuant to N.C.R. Evid. 401. In addition, the trial court also excluded the evidence under N.C.R. Evid. 403 because it found that any probative value the evidence might have was outweighed by its prejudicial effect. A trial court's ruling on relevancy is given great deference on appeal. *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). Defendant has failed to demonstrate the relevancy of this information to his case.

[11] Defendant further argues that the trial court erred in denying his motion to suppress his out-of-court statement to law enforcement. Specifically, defendant contends that his statement was taken in violation of his *Miranda* rights. However, the State never introduced defendant's statement into evidence. Detective Mark Tolbert, formerly a detective and currently a patrolman with the Asheboro Police Department, testified that he interviewed defendant. The only statement which Officer Tolbert testified that was made by the defendant related to his height. Defendant has failed to show any prejudicial error. Therefore, we find this assignment of error to be without merit.

We have examined defendant's remaining assignments of error and find them to be without merit.

During the trial of this case, the defendant made numerous motions to which the trial court responded with appropriate findings and conclusions. It is apparent from the record that the able trial judge conducted the trial in a manner which assured the defendant that he would receive a fair trial. We conclude the defendant received a fair trial free from prejudicial error.

No error.

Judges McGEE and EDMUNDS concur.