STATE OF NORTH CAROLINA v. KYLE EDWARD RUTHERFORD AND RICKY THOMAS FAUST

No. 8412SC79

(Filed 16 October 1984)

1. Criminal Law § 101 — conversation between juror and witness — mistrial not required

Where a juror and a witness for the State discussed whether they had mutual acquaintances during a lunch recess, the court did not abuse its discretion by denying defendants' motion for a mistrial where the court conducted a *voir dire* after the jury verdict was returned, made a full inquiry into the facts and circumstances surrounding the conversation and whether the defendants had suffered prejudice by it, and gave defendants a full opportunity to ask questions concerning the contents of the conversation and its effect on the juror. G.S. 15A-1061.

2. Robbery § 4.3 — armed robbery — evidence sufficient — incriminating statements not hearsay

The evidence was sufficient to support one defendant's conviction of armed robbery where there was evidence that such defendant had made threats which helped control the victim's movements, and that such defendant had participated in a conversation in which incriminating statements had been made, even though the witness could not remember specifically what each defendant had said.

3. Criminal Law § 86.8 — impeachment of State's witness — plea bargain

There was no error in refusing to allow a State's witness to answer a question about the amount of time he would actually serve when the jury had been informed that the witness testified in return for the State accepting his guilty plea to a reduced offense and a set maximum sentence of eight years. The amount of time he would actually serve was speculative. G.S. 15A-1052(c).

APPEAL by defendants from *Bowen, Judge*. Judgment entered 29 August 1983, in Superior Court, CUMBERLAND County. Heard in the Court of Appeals on 26 September 1984.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Guy A. Hamlin for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender Robin E. Hudson for defendant appellant, Kyle Edward Rutherford.*

*Harris, Sweeny & Mitchell by Ronnie M. Mitchell for defendant appellant, Ricky Thomas Faust.*

BRASWELL, Judge.

While hitchhiking, Harold Wayne Zortman, a Fort Bragg sol-
dier, was robbed at gunpoint. The defendants were tried and con-
victed by a jury of Robbery with a Firearm. An assignment of
error common to both defendants' briefs concerns whether the
trial court abused its discretion by failing to declare a mistrial on
the grounds that the jury was improperly influenced by contact
with a State's witness. Defendant Rutherford additionally assigns
as error the entry of his conviction judgment when crucial evi-
dence admitted against him constituted hearsay. Defendant Faust
also contends that the trial court erred by limiting his scope of
cross-examination for impeachment purposes as to a witness's
bias or prejudice.

At trial Harold Zortman testified that at about 10:00 p.m. on
15 January 1983 he was hitchhiking to Fayetteville to attend a
friend's party when three white men in a car stopped and asked
him if he wanted a ride. He climbed in the car and was then
driven to a wooded area where he was ordered by the men to re-
move his wallet, its contents of approximately eighty-three dol-
lars, his belt, his knife, and his jacket. The man sitting in
the front passenger's seat had a shotgun. After handing over the
items, the robbers told Zortman to start walking back down the
road and not to look back. The robbers drove away. On cross-
examination, the defendants elicited evidence from Zortman tend-
ing to show that the descriptions he gave to the police did not
match the physical characteristics of the defendants and that he
was unable to positively identify the defendants through photo-
graphs as the robbers.

Pursuant to a plea agreement, Vincent Gorneault pled guilty
to common law robbery for his participation in the crime and tes-
tified for the State identifying the defendants as the other two
robbers. He further testified that he had been present for the
planning of the crime, owned the shotgun used by Faust in the
robbery, and had driven the vehicle.

Further evidence offered identifying the defendants as par-
ticipants in the crime was the testimony of Burton Keeler who
saw the men after the robbery and heard them discuss "what
they did and how they did it."

The defendants countered the State's case by offering evidence supporting alibi defenses.

On 24 August 1983 after closing arguments had been made, but before the trial judge had charged the jury, the victim, Harold W. Zortman, had a conversation with a juror, Robert Foggy, Jr., during a lunch recess. While standing next to each other in the line to order food from the snack bar in the basement of the courthouse, Zortman asked Foggy if he had understood him correctly in the hearing that he was retired from the artillery division in the military. They then discussed for three minutes or so whether they knew some of the same people in that division.

This contact between the victim and the juror was made known to the prosecutor and then to the trial judge, but defense counsels were not informed of the conversation until a verdict had been reached. After the jury was dismissed, the trial judge immediately conducted a *voir dire* hearing to inquire into the circumstances surrounding the conversation. Both Zortman and Foggy were examined and cross-examined under oath. Each man testified that their conversation did not concern the criminal lawsuit being tried nor did they discuss anything related to Foggy's jury service. Following this *voir dire*, the trial court, in denying the defendants' motion for a mistrial, determined that because the conversation had no effect upon the verdict, the defendants had not been prejudiced.

[1]   The defendants argue that the trial court erred in denying their motions for a mistrial. According to G.S. 15A-1061, a motion for a mistrial by a defendant should be granted when an occurrence during the trial results "in substantial and irreparable prejudice to the defendant's case." "The decision as to whether substantial and irreparable prejudice has occurred lies within the court's discretion and, absent a showing of abuse of that discretion, the decision of the trial court will not be disturbed on appeal." *State v. Mills*, 39 N.C. App. 47, 50, 249 S.E. 2d 446, 448 (1978), *disc. rev. denied*, 296 N.C. 588, 254 S.E. 2d 33 (1979). The defendants further contend that besides abusing his discretion the trial judge also violated the defendants' due process rights by failing to inform the defendants of the possible witness/juror misconduct prior to the *voir dire* hearing and by failing to allow the defendants a recess to investigate the matter.

Due process requires that a defendant have "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed. 2d 751, 755 (1961). It is the duty and responsibility of the trial judge to insure that the jurors remain impartial and uninfluenced by outside forces. The defendants rely on *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed. 2d 1250 (1959) for the proposition that in spite of the trial judge's finding that no prejudice to the defendant had occurred, a conviction nevertheless must be reversed if the jury has been "infected" by an outside source. As a general proposition, we would agree, but whether the alleged misconduct has affected the impartiality of a particular juror is a discretionary determination for the trial judge. "The reason for the rule of discretion is apparent. . . . The trial judge is in a better position to investigate any allegations of misconduct, question witnesses and observe their demeanor, and make appropriate findings." *State v. Drake*, 31 N.C. App. 187, 190, 229 S.E. 2d 51, 54 (1976). Misconduct must be determined by the facts and circumstances of each case, and " '[t]he circumstances must be such as not merely to put a suspicion on the verdict, because there was an opportunity and a chance for misconduct, but that there was in fact misconduct.' " *State v. Johnson*, 295 N.C. 227, 234, 244 S.E. 2d 391, 396 (1978), *quoting Lewis v. Fountain*, 168 N.C. 277, 279, 84 S.E. 278, 279 (1915). Furthermore, we find it important to note that the U.S. Supreme Court in *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed. 2d 589 (1975) held that *Marshall* was not a constitutional ruling applicable to the States through the Fourteenth Amendment and had no application beyond the federal courts.

We believe, therefore, that due process did not require in the present case that the defendants be told of the alleged misconduct before the verdict had been reached or be allowed a recess to investigate on their own the witness/juror contact. Our determination instead must focus on whether the trial judge took the steps necessary to insure that the due process requirement of impartiality was maintained. In light of prior North Carolina decisions and from our review of the record, we hold that the judge did not abuse his discretion by denying the defendants' motions for a mistrial.

In *State v. Selph*, 33 N.C. App. 157, 234 S.E. 2d 453 (1977), a juror was seen talking with the defendant's accomplice's mother.

The trial judge refused to allow the defendant to cross-examine the juror and failed to examine this juror individually himself, but rather put to the jurors generally whether they had discussed the case with anyone during a recess. In holding that the trial judge had not abused his discretion in conducting his investigation of the matter in this manner and that the inquiry was sufficient to satisfy due process, this Court noted that in most cases where the defendant's rights had been violated the trial court had refused to hold any sort of hearing, or the hearing that was conducted was inadequate to discover and evaluate the alleged jury misconduct under the circumstances. *See for example, State v. Drake, supra.*

In the present case, a *voir dire* hearing was conducted and was adequate to insure that no prejudice resulted to the defendants due to the conversation which occurred between the witness and the juror. Although the trial court was informed of this conversation after the final instructions to the jury had been given but prior to the completion of the jury's deliberation, it took no action until after the verdict, realizing that there would be time after a verdict had been reached to set aside any guilty finding if the facts so warranted. After the verdict was returned, the trial court immediately held a *voir dire* hearing and made a full inquiry into the facts and circumstances surrounding the conversation and whether the defendants had suffered prejudice by it. Both the witness and the juror were examined under oath. The defendants were afforded the full opportunity to ask questions concerning the contents of the conversation and its effect on Mr. Foggy. Upon discovering that the conversation lasted only minutes and did not concern the defendants' case or Mr. Foggy's jury service, the trial court concluded that the conversation had no effect on the verdicts rendered against the defendants and that the defendants had not been prejudiced thereby.

We reach the same conclusion as the Supreme Court in a factually similar case, *O'Berry v. Perry*, 266 N.C. 77, 145 S.E. 2d 321 (1965). After the jury in *O'Berry* had returned its verdict for the plaintiff, the defendant moved to have it set aside on the grounds that a meeting had occurred between a juror, the plaintiff, and a plaintiff's witness. The trial court made an immediate investigation and found: that they had walked to lunch together; that they had talked about fishing and not about the case; and that there had been no effect on the verdict. Relying on the trial court's in-

vestigation, the Supreme Court found no abuse of discretion in denying the defendant's motion. Likewise, we have relied on the trial court's investigation and hold that the trial court did not abuse its discretion in the denial of the defendants' motions for a mistrial.

[2]　The defendant Rutherford also assigns as error that the trial court entered a judgment of conviction against him although crucial portions of the evidence against him were inadmissible as hearsay. Basically, Rutherford contends that there is no competent evidence that tends to show that he actively participated in the robbery. He contends that the only competent evidence presented by the State merely shows that he was present at the scene of the crime. According to his brief, "[t]he only substantial evidence of Rutherford's having been a willing participant is contained in statements to which Burton Keeler testified. . . . Keeler reported that the three—Faust, Gorneault and Rutherford—had returned to the house of a mutual friend and that 'they' talked about 'what they did and how they did it.'" The trial judge allowed this testimony over repeated objections even though Keeler was unable to specifically recall exactly what each robber said: Keeler testified.

> I can't recall anybody saying anything specifically because it has been so long. But, you know, pretty much all three of them were getting into the conversation and telling me how they did it.

*　　*　　*

> They told me that they had picked up a GI hitchhiking, took him out to the reservation and robbed him with a sawed-off shotgun, took ninety dollars from him and showed me the belt they had took from him and the Buck knife.

Although the witness could not remember exactly what each defendant had said, it is clear that any statements made by the defendants in this context would be admissible as admissions. The statements that Keeler might have attributed to Gorneault would be admissible to corroborate Gorneault's earlier testimony that after the robbery they discussed or "boasted" in front of Keeler how they had committed the crime.

However, contrary to Rutherford's contentions, there was other evidence presented that tended to show that he actively participated in the crime. Zortman testified that Rutherford stated during the robbery that if Zortman did not give them any trouble he would not be shot. Zortman also stated that although Rutherford did nothing in particular that stood out in his mind he mimicked the actions and statements of Faust who was holding the shotgun. Gorneault also indicated that Rutherford participated in the robbery by telling Zortman not to move.

The State's evidence shows therefore that although Rutherford was not present when Gorneault and Faust planned the robbery, he did go with them that night and helped Faust control Zortman's movements. Rutherford's defense at trial was that he was somewhere else at the time of the crime, not that he was there with Faust and Gorneault but did not take part in the robbery. We hold that the State presented sufficient evidence to show that Rutherford had in fact acted in concert with the others and that the trial judge properly entered the judgment of conviction against him.

[3] Defendant Faust further assigns as error the trial court's refusal to allow Gorneault to answer a question about the amount of time he would actually serve in jail pursuant to his plea bargain arrangement with the State for his testimony. Faust contends that the trial court's ruling prevented him from effectively impeaching Gorneault on the basis of his prejudice and bias in the State's favor. The pertinent discourse follows:

Q. Isn't it true, sir, that you know, of your own knowledge, that you will never serve eight years? You will serve three years and a few months?

[Prosecutor]: Object.

Court: Sustained.

[Prosecutor]: I would ask for a curative instruction.

Court: Members of the Jury, that is improper cross-examination. I instruct you not to consider that question nor any answer which may have been given.

We hold that the trial court properly sustained the State's objection. Gorneault agreed to testify at trial in return for the State accepting his guilty plea to a reduced offense and a set sentence of eight years. G.S. 15A-1052(c) requires that the trial court "inform the jury of the grant of immunity and the order to testify prior to the testimony of the witness under the grant of immunity." The record reveals that the trial court did inform the jury of the plea arrangement before the testimony of the witness was received. Thus, the jury knew that the witness was "receiving something of value in exchange for his testimony which might bear on his credibility." *State v. Hardy*, 293 N.C. 105, 120, 235 S.E. 2d 828, 837 (1977). The question of how much time Gorneault would actually spend in jail was speculative. Gorneault had only been guaranteed that he would receive a maximum sentence of eight years in jail. Whether his time could or would be shorter was beyond the knowledge of the State or the witness at this point, and in the future hands of the State Department of Correction.

Having reviewed the assignments of error raised by both defendants, we hold that no prejudicial error was committed.

No error.

Judges WEBB and EAGLES concur.