STATE OF NORTH CAROLINA v. MITCHELL DANYELL BANKS

No. COA03-322

(Filed 17 February 2004)

**1. Evidence— defendant's statements—not prejudicial**

There was no undue prejudice from the denial of defendant's motion in limine to prohibit admission of his statements during a burglary, kidnapping, and assault. Defendant's actions were enough to establish the elements of the offenses.

**2. Jury— undisclosed contact with witness—no prejudice**

There was no prejudice from a juror's failure to reveal his feeling that he had "crossed paths with" a law enforcement officer who was to be a witness, or from his brief contact with the officer trying to figure out where they had met. There was no possibility that a vague familiarity with the witness could have compromised the juror's ability to be fair and just, regardless of whether the attorney provided effective assistance of counsel in the manner of his objection when the contact was revealed after the verdict.

**3. Appeal and Error— objection to record sheet—subsequent stipulation**

A defendant lost the benefit of his objection to an allegedly inaccurate record sheet when he subsequently stipulated to the record sheet.

Appeal by defendant from judgment dated 18 September 2002 by Judge J.B. Allen, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 3 December 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Dorothy Powers, for the State.*

*Paul M. James and L. Jayne Stowers for defendant-appellant.*

BRYANT, Judge.

Mitchell Danyell Banks (defendant) appeals a judgment dated 18 September 2002 entered consistent with a jury verdict finding him guilty of first-degree burglary, second-degree kidnapping, and assault on a female. The trial court entered prayers for judgment on the convictions of second-degree kidnapping and assault on a female.

Prior to trial, defendant made a "Request for Voluntary Disclosure" by the State. Defendant subsequently filed a motion *in limine* with the trial court pursuant to N.C. Gen. Stat. § 15A-903(a)(2) seeking exclusion of "any mention before the jury of any statement alleged to have been made by . . . defendant but not disclosed to . . . defendant or his counsel by 12 o'clock noon on Wednesday prior to the beginning of the week during which this case was calendared for trial." At the hearing on the motion, the State explained it had provided defendant with the police report prepared by the investigating officer and that all statements made by defendant to witnesses, of which the State was aware, were contained in the report. When the trial court denied the motion *in limine*, defendant sought to make an offer of proof by submitting the police report, which defendant contended did not include all the statements to which the witnesses would testify. The trial court did not grant defendant's request and brought the jury in for opening statements. During the testimony of the State's witnesses, defendant renewed his objection, based on the motion *in limine*, to testimony regarding statements the witnesses had heard defendant make during the commission of the charged offenses. Defendant made no further attempt to proffer the police report.

The State's evidence tended to show that in the early morning hours of 2 December 2001, while it was still dark, defendant, wearing black gloves, twice entered without permission the unlocked residence of Tameka Harvey (Harvey) to look for Tanique Norman (Norman) and Latoshia Holt (Holt). Defendant had dated all three women at one time or another, and defendant and Norman had just broken up the previous day.

Harvey testified that she awoke to find defendant standing in her bedroom. In response to defendant's question, she told him Norman and Holt had gone out and she did not know their whereabouts. Defendant left the house only to return a short time later. This time defendant checked the room in which Norman and Holt were sleeping following their return from their evening out. Harvey told defendant to leave, but he ignored her and instead ordered Norman to get up and come with him. When Norman resisted and "started saying no, hollering and screaming," defendant grabbed her and made her get her things. All the while, defendant repeatedly placed his hands in his back pocket. Seeing Norman's resistance, defendant pulled a small silver gun with a pearl handle from his back pocket and began pushing Norman, who was now crying, toward the bedroom door.

STATE v. BANKS

[163 N.C. App. 31 (2004)]

Defendant asked the women "Why do y'all think I wore these gloves?" and then stated "So I won't leave any evidence." Holt reached for her cellular telephone on the floor, but defendant stepped on her hand and took the telephone away from her, saying "You're not going to call anyone." Defendant pushed Norman toward the kitchen, "pushed her down on the floor and pushed her on out the [front] door." Harvey followed them outside and saw defendant force Norman into a silver van. Just before the van drove away, Harvey heard a gunshot. Thereafter, Harvey and Holt went to the home of Harvey's mother to telephone the police.

Norman testified she was asleep in Holt's room at Harvey's residence when she first heard defendant's voice in the kitchen. Defendant was questioning Holt, who explained Norman was not there. Because she was scared of what defendant might do, Norman stayed in the bedroom. After defendant had left, she did, however, telephone defendant's cellular phone and told him to "stop walking into people's houses looking for [her]." Defendant responded she had "a choice to come out or he [was] going to come in there and get [her]." Defendant returned to the house shortly thereafter and was met by Harvey at the door. Defendant pushed Harvey out of the way and headed toward Norman, saying "Let's go." In response to her refusal to go, defendant told Norman she had no choice. Norman testified the only reason she went with defendant was because he pulled a gun from his pocket and she "was afraid that he was going to use it." While still in the house, defendant also told Norman she "was not going to make it back home to see [her] mother." After defendant pushed her in the van, he shut the door on Norman's leg, went around to the driver's side, raised the gun, and shot into the air. Norman tried to exit the van, but defendant came back around and shut the passenger side door. This time, Norman stayed in her seat because she was scared and there was "no telling what [defendant] could have done to [her]" if she had moved again. Defendant began searching for his cellular telephone as he started driving away. Thinking he had dropped the telephone at Harvey's residence, defendant placed the vehicle in reverse, but because he was not paying attention while backing up, he hit a parked truck. As he stepped outside to investigate the damage, Defendant handed Norman the gun. Holding the gun, Norman got out of the van and started running toward Harvey's house. She could hear defendant calling her as she entered the house to look for Harvey and Holt. Unable to find them, Norman hid the gun in a laundry basket, covering it before running down the street to the home of Harvey's mother.

STATE v. BANKS

[163 N.C. App. 31 (2004)]

Officer J.T. Long testified that in the early morning hours of 2 December 2001 he was en route to Harvey's residence in response to a 911 call when he observed a man standing in the street "throwing his arms up in the air" and appearing to be "angry and agitated and cursing." Officer Long stopped the man, who was wearing black gloves and identified himself as Mitchell Banks, and detained him for further investigation. Officer Long proceeded down the street, noting a collision between a parked truck and another vehicle, and arrived at Harvey's empty house. Officer Long radioed the police station to confirm the origin of the 911 call and was directed to Harvey's mother's home. After questioning Norman, Harvey, and Holt, Officer Long went back to Harvey's residence where he found the weapon, a .25 caliber semi-automatic handgun, in the laundry basket. The magazine was still in the gun, but no rounds were in the chamber. Officer Long found one spent .25 caliber shell casing on the street in front of Harvey's house.

---

The issues are whether: (I) defendant can show prejudicial error based on the trial court's denial of his motion *in limine* and pretrial offer of proof; (II) defendant received ineffective assistance of counsel when his counsel moved for a mistrial as opposed to a new trial or appropriate relief after the jury returned its verdict; and (III) the record sheet used at the sentencing hearing contained errors.

I

**[1]** Defendant argues he was prejudiced by the trial court's erroneous denial of (1) his motion to suppress testimony regarding statements made by him on 2 December 2001 and (2) his offer of proof of the police report to show the discrepancy between the statements provided by the State prior to trial and the witnesses' actual testimony. According to defendant, the prejudice derived from the use of his statements to supply an element of the kidnapping charge, which in turn represented an element of the burglary charge. Because we conclude that defendant was not unduly prejudiced by the testimony regarding his statements to the witnesses, we do not determine whether the trial court's ruling constituted error. *See* N.C.G.S. § 15A-1443(a) (2001) (a defendant carries the burden of showing he was prejudiced by an error committed at trial in that a reasonable possibility exists that absent the error a different result would have been reached).

In this case, defendant's actions, as opposed to his words, were sufficient to establish the elements of the charged offenses. First,

the theory of kidnapping pursued by the State in this case required a showing that defendant unlawfully removed Norman from one place to another, without her consent, for the purpose of terrorizing her. *See* N.C.G.S. § 14-39(a)(3) (2001); *State v. Davis*, 340 N.C. 1, 24, 455 S.E.2d 627, 639 (1995) (terrorizing is defined as " 'putting [a] person in some high degree of fear, a state of intense fright or apprehension' ") (citation omitted). The evidence presented at trial revealed that defendant pushed and dragged Norman out of Harvey's house at gunpoint. Thus, the first two elements of the State's theory of kidnapping are satisfied. In addition, the evidence showed Norman was in a heightened state of fear, not knowing what defendant would do with the gun. She was crying and screaming while being forced out of the house. She was pushed into the van by defendant who closed the door on her leg, and then he fired a demonstrative gunshot into the air. This constitutes sufficient circumstantial evidence from which a jury could reasonably find defendant's intent to terrorize Norman. *See State v. Moore*, 315 N.C. 738, 745-46, 340 S.E.2d 401, 406 (1986) (intent to terrorize established where the evidence supported a finding that the defendant intended by his actions to put the victim in a state of intense fright or apprehension so that she would agree to stay with him and that he removed her to a mobile home and confined her there for that purpose); *State v. Williams*, 127 N.C. App. 464, 468, 490 S.E.2d 583, 586 (1997) (where the defendant pointed a gun at the victim and witnesses testified that the victim was crying and hysterical throughout the ordeal, there was sufficient evidence of the defendant's intent to terrorize); *see also State v. Baldwin*, 141 N.C. App. 596, 604, 540 S.E.2d 815, 821 (2000) (" 'the test is not whether subjectively the victim was in fact terrorized, but whether the evidence supports a finding that the defendant's purpose was to terrorize her' ") (citation omitted).

Next, the elements of the offense of first-degree burglary of which defendant was found guilty required a showing by the State that defendant: (1) broke, (2) and entered, (3) at night, (4) into the dwelling, (5) of another, (6) that was occupied, (7) with the intent to kidnap Norman. *See* N.C.G.S. § 14-51 (2001); *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721-22 (2001); *see also State v. Sweezy*, 291 N.C. 366, 383, 230 S.E.2d 524, 535 (1976) ("the mere pushing or pulling open of an unlocked door constitutes a breaking"). The evidence regarding defendant's actions on 2 December 2001 established that defendant entered Harvey's house at nighttime without permission, while Norman, Holt, and Harvey were inside, and with the intent to kidnap Norman. Defendant's oral statements to the witnesses were

therefore not vital to a guilty verdict. Accordingly, this assignment of error is overruled.

II

[2] Defendant further contends he received ineffective assistance of counsel when his counsel moved for a mistrial as opposed to a new trial or appropriate relief after the jury had already returned its verdict.

After the jury verdict had been rendered, the jury released from duty, and the sentencing hearing had begun, Keith French, juror number six, came forward with allegations of juror intimidation and harassment he had encountered through defendant's younger brother and three other men. During the trial court's questioning of French, the juror indicated the men had confronted him because they had seen him talk to Officer Long during a court recess. French and Officer Long had been talking for a "brief moment trying to figure out where [they] ha[d] crossed paths before because [French] had seen him many times." Defense counsel moved for a mistrial on the basis that French knew Officer Long but did not disclose this fact during jury selection and that French spoke with Officer Long during the trial. The trial court denied the motion and proceeded with the sentencing hearing.

"A defendant claiming ineffective assistance of counsel must demonstrate that his counsel's performance was defective and that this defective performance prejudiced the defense." *State v. Jones*, 146 N.C. App. 394, 400, 553 S.E.2d 79, 83 (2001). In reviewing such a claim, the court need not determine whether counsel made errors if the record does not show a reasonable probability that a different verdict would have been reached in the absence of counsel's deficient performance. *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248-49 (1985).

In his brief to this Court, defendant acknowledges that the trial court has no authority to grant a motion for a mistrial after the verdict has already been returned, *see State v. Smith*, 138 N.C. App. 605, 609, 532 S.E.2d 235, 238 (2000), and argues that counsel should have moved for a new trial or appropriate relief due to the prejudicial impact of the juror misconduct. Defendant contends French lied during jury selection about not knowing Officer Long and violated court rules by talking to the officer, thereby creating the appearance of bias.

"Due process requires that a defendant have 'a panel of impartial, "indifferent" jurors.' " *State v. Rutherford*, 70 N.C. App. 674, 677, 320 S.E.2d 916, 919 (1984) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722, 6 L. Ed. 2d 751, 755 (1961)). "It is the duty and responsibility of the trial judge to insure that the jurors remain impartial and uninfluenced by outside forces." *Id.* Misconduct must be determined by the facts and circumstances of each case, and " '[t]he circumstances must be such as not merely to put suspicion on the verdict, because there was an opportunity and a chance for misconduct, but that there was in fact misconduct.' " *State v. Johnson*, 295 N.C. 227, 234, 244 S.E.2d 391, 396 (1978) (quoting *Lewis v. Fountain*, 168 N.C. 277, 279, 84 S.E. 278, 279 (1915)). Having reviewed French's statements to the trial court, we find no such misconduct.

During *voir dire*, the trial court asked the jury if it knew any of the State's witnesses, including Officer Long. None of the jurors spoke up at that time. In response to defense counsel's examination of the jury, French did indicate that he was familiar with several people in law enforcement. The fact that French admitted after the trial that at some point during the trial he realized he had "crossed paths before" with Officer Long only indicates that he had seen the officer on prior occasions, not that he knew him personally. Moreover, French explained that they only talked for a moment to try and figure out where they had seen each other before. There was no discussion of the trial at that time. Based on these circumstances, there was no possibility that a personal connection to the case, through a vague familiarity with Officer Long, could have compromised French's ability to be fair and just. *See Rutherford*, 70 N.C. App. at 676-77, 320 S.E.2d at 918-19 (no abuse of discretion in denying the defendant's motion for a mistrial based on juror conversation with witness that lasted only a few minutes and did not concern the defendant's case or the juror's jury service because it had no effect on the verdict and therefore did not prejudice the defendant). As defendant did not show any prejudice from his counsel's failure to make the proper motion, his ineffective assistance of counsel claim fails.

III

**[3]** Finally, defendant asserts the record sheet used at the sentencing hearing contained errors.

At the sentencing hearing, the State submitted defendant's prior record sheet. Upon defendant's questioning of the correctness of the record sheet, the trial court asked the State to procure copies of

the case files from the clerk's office. The trial court then interrupted the sentencing proceeding to hear French's testimony on the harassment he had experienced. When sentencing resumed, the State had not yet obtained the requested case files. The trial court asked defendant: "What is it that you disagree [with] on this record sheet?" Defendant replied, "Your Honor, we don't have any problem with the record sheet," and at the conclusion of the sentencing phase agreed "Your Honor sentenced properly."

When evidence is admitted without objection, the benefit of a prior objection to the same or similar evidence is lost, and the defendant is deemed to have waived his right to assign as error the admission of the evidence. *State v. Jolly*, 332 N.C. 351, 361, 420 S.E.2d 661, 667 (1992). As defendant in this case therefore lost the benefit of his initial objection through his subsequent stipulation to the accuracy of the record sheet, he did not preserve this issue for appeal. *See* N.C.R. App. P. 10(b)(1) ("[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely . . . objection"). Consequently, we do not address this assignment of error.

With respect to defendant's remaining arguments addressed in his brief to this Court, we note that defendant failed to make the necessary requests or objections at trial, *see* N.C.R. App. P. 10(b)(1), and did not "specifically and distinctly" contend plain error in his respective assignments of error, *see* N.C.R. App. P. 10(c)(4). Thus, they were not preserved for appeal.

No error.

Judges CALABRIA and ELMORE concur.