IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-48

Filed 3 September 2024

Wake County, Nos. 19 CRS 217618–20

STATE OF NORTH CAROLINA

v.

CHRISTOPHER GALBREATH, Defendant.

Appeal by Defendant from Judgments entered 1 September 2022 by Judge Thomas H. Lock in Wake County Superior Court. Heard in the Court of Appeals 12 June 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Ellen Newby, for the State.*

*Christopher J. Heaney for Defendant-Appellant*

HAMPSON, Judge.

## **Factual and Procedural Background**

Defendant appeals from his convictions for two counts of Statutory Rape of a Child by an Adult, three counts of Statutory Sex Offense with a Child by an Adult, and two counts of Indecent Liberties with a Child. The record reflects the following:

In 2007 G.M. was born to her mother and Defendant, who were not in a relationship but worked together and were friends. Until she was in the sixth grade, G.M. and Defendant primarily interacted on birthdays and holidays.

In November 2018, G.M. began living with Defendant. She slept on a pad on a bedroom floor with him. One night, G.M. woke up with her hand on Defendant's penis. She reported this to her grandmother, who lived in the home with Defendant and G.M., but was told to go back to sleep. After this, Defendant began regularly forcing G.M. to perform oral sex on him at night. He would also drive her to a location in the woods where he forced her to perform oral and vaginal sex. He continued raping her orally, vaginally, and anally in the home, on at least one occasion to the point of injury, and did not stop after G.M. told him she was hurt. Defendant gave G.M. alcohol and forced her to take emergency contraception when her menstruation was late, telling her that if she got pregnant he would go to prison for a long time. He would also get drunk and tell G.M. that she "deserved to be raped."

In August 2019, G.M. called the police after Defendant struck her. She was taken to a hospital and reported the sexual abuse. Defendant was indicted for two counts of Statutory Rape of a Child by an Adult, three counts of Statutory Sex Offense with a Child by an Adult, and two counts of Indecent Liberties with a Child. The case came on for jury trial in August 2022.

At trial, G.M. testified to the above. During the State's case, one of the bailiffs reported to the trial court that one of the jurors, Juror Number Four, appeared to have torn pages out of her notepad and taken them with her when the court recessed for the day. The district attorney's legal assistant also reported that one of the State's witnesses had overheard Juror Four talking with other jurors about research she had

done. That witness testified:

> I heard someone who had a red jury tag on saying
> something about development. I thought she said maybe
> child or psychological development, but I heard the word
> "development" very clearly. And so I told Ms. Byrum that.
> And I said it a little more decidedly when I told Ms. Byrum
> about it, but I know I heard the word "development," and I
> thought I heard the word "psychological child development
> when I heard it, so I mentioned it to Ms. Shekita's
> assistant.

She identified Juror Four as having made the comments and did not hear any

additional conversation.

The trial court questioned Juror Four, who denied having any conversation as

described by the witness and claimed that she only tore blank pages out of her

notepad. She testified that she was struggling to keep up with testimony and had

taken the pages to write down notes in the jury room. The trial court reopened voir

dire, and both the State and counsel for the defense challenged Juror Four for cause.

The trial court sustained the challenge and removed Juror Four.

The defense moved for a mistrial based on Juror Number Four's conduct. The

trial court examined each juror individually.

Jurors One, Three, Six, Seven, and Nine and Alternate Juror Two did not hear

any statements by other jurors about the evidence in the case or issues involved.

Several of the other jurors testified that Juror Four had spoken to them or they

had overheard her speaking. Juror Two heard Juror Four make some statements the

previous day, but did not know what she had said, and said that another juror stopped

Juror Four from continuing to speak. Juror Five testified that Juror Four attempted to talk to him, but he couldn't recall what she had started to say and he stopped her from finishing. Juror Eight testified that Juror Four attempted to make a statement on the first day of the trial but that another juror told her to stop talking: "She started to say something about little girl, and the other girl told her to stop talking, and that was -- that was it." Juror Ten testified that Juror Four had "said something to the effect of I feel very bad for that girl," and Juror Ten told her they were not allowed to talk about the case. Juror Eleven also heard Juror Four speak about G.M.'s testimony and how she felt after hearing it. Juror Twelve also heard Juror Four "remarking about her personal feelings about the information she had heard in the courtroom," describing G.M.'s testimony as "awful." Alternate Juror One testified that he only heard one other juror say that it was difficult to hear the evidence and testimony presented.

No juror stated that Juror Four had spoken about child development or conducting outside research. Each juror, when asked, responded that they could continue to serve as a fair and impartial juror.

After the trial court had examined the jurors, Defendant renewed his motion for a mistrial. The trial court found that no juror had heard any comments from Juror Four regarding child development or outside research she had conducted. It found that some had heard her comment on the difficult nature of G.M.'s testimony, but that each juror who had heard her remarks reported that she was quickly cut off. It

also found that the jurors were not impacted by Juror Four's conduct and could serve as fair and impartial jurors and denied the motion for a mistrial.

The trial court seated the first alternate in place of Juror Number Four, and instructed the jury not to have any conversations about the case until deliberations began and not to consider outside resources or conduct outside research.

The trial continued and the jury found Defendant guilty of all charges. The trial court sentenced Defendant to three consecutive sentences of 300 to 420 months' imprisonment, and a concurrent sentence of 21 to 35 months. Defendant gave oral notice of appeal.

## Issue

The sole issue on appeal is whether the trial court erred in denying Defendant's motion for a mistrial based on juror misconduct.

## Analysis

We review the trial court's denial of a motion for mistrial for abuse of discretion. *State v. Burgess*, 271 N.C. App. 302, 305, 843 S.E.2d 706, 710 (2020). A trial court abuses its discretion when its ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Due process guarantees defendants a panel of impartial jurors, and the trial court has a duty to ensure the jurors "remain impartial and uninfluenced by outside persons." *State v. Rutherford*, 70 N.C. App. 674, 677, 320 S.E.2d 916, 919 (1985).

When allegations of juror misconduct are made, the trial court must make "such investigations as may be appropriate" to determine if misconduct has occurred and if the defendant has been prejudiced. *State v. Drake*, 31 N.C. App. 187, 191, 229 S.E.2d 51, 54 (1976). "The determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal." *State v. Bonney*, 329 N.C. 61, 83, 405 S.E.2d 145, 158 (1991). The trial court's ruling is given deference because questions of juror misconduct and its effect depend on facts and circumstances specific to the case. *Drake* at 190, 229 S.E.2d at 54.

When investigating possible juror misconduct, the trial court is vested with the "discretion to determine the procedure and scope of the inquiry." *State v. Burke*, 343 N.C. 129, 149, 469 S.E.2d 901, 910 (1996). Because the trial court is in the best position to examine the facts and circumstances, we give great weight to its determination of whether juror misconduct occurred and whether to declare a mistrial. *State v. Boyd*, 207 N.C. App. 632, 640, 701 S.E.2d 255, 260 (2010). "[A] mistrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Jones*, 241 N.C. App. 132, 138, 772 S.E.2d 470, 475 (2015).

In sum, where the trial court has made a "careful, thorough" investigation and concluded the conduct has not prejudiced the jury on any key issue, we have generally declined to find it abused its discretion. *Drake*, 31 N.C. App. at 191, 229 S.E. 2d at 53.

In this case, the trial court was informed Juror Four may have conducted outside research and shared that information with other jurors, based on the prosecutor's legal assistant's testimony that she overheard Juror Four say the word "development" and possibly "psychological child development." The trial court examined Juror Four and excused her. It then questioned each remaining juror and alternate individually. None of the jurors testified that they had heard Juror Four speak about outside research she had done or child development. Of the jurors who heard Juror Four speak, several could not specify what she had said, or testified that she was stopped from speaking before communicating any information. Three jurors heard her remark on her sympathy for G.M., and one heard her say the testimony was "hard to hear." During the examinations, the trial court allowed counsel for the State and Defendant to ask the jurors additional questions. Each juror stated they could remain fair and impartial. The trial court allowed the trial to continue, instructing the jurors not to have any conversation about the case until deliberations began and not to consider outside information or do their own research.

The trial court's investigation was appropriate and sufficient. In *State v. Taylor*, for example, the trial court investigated a report by a juror that their vehicle was followed by a person from the gallery when court recessed the previous day. 362 N.C. 514, 537, 669 S.E.2d 239, 260. Our Supreme Court held that the trial court's investigation, consisting of examining the affected juror, examining another juror who had witnessed the alleged incident, and rebuking the audience member, was

sufficient. As in *Taylor*, the trial court here "thoroughly question[ed] all parties involved in or affected by the incident," it "received assurances . . . of impartiality" from each juror, and it concluded that Defendant had not been prejudiced. *Id.* at 538, 669 S.E.2d at 260. We cannot identify, nor does Defendant propose, any way in which the trial court's investigation was deficient.

Instead, Defendant argues that the trial court's ruling was an abuse of discretion: (1) because its findings of fact were unsupported by the jurors' testimony; and (2) because it erred in concluding that Defendant did not suffer prejudice. We disagree. A trial court does not abuse its discretion when its decision on a motion for mistrial is based on its findings of fact and those findings are supported by evidence. *State v. Smith*, 320 N.C. 404, 418-19, 358 S.E.2d 329, 337 (1987).

Defendant argues the trial court found that "only two or three of the jurors heard [Juror Four's] comments," but that finding was unsupported because five of the jurors testified to hearing Juror Four comment on the case. He also takes issue with the finding that the comments were made only "yesterday" (Tuesday), arguing there was testimony Juror Four had also made comments on Monday, the first day of trial. However, the trial court actually found:

> that two or three of the jurors reported to the Court, upon questioning, that [Juror Four] yesterday in the jury room did made some statement concerning the testimony of the alleged victim in this case and in particular commenting on the – how difficult it may have been for this young lady to testify.

Of the jurors who testified that Juror Four spoke, most did not recall the substance of her comments. Only Jurors Ten, Eleven, and Twelve testified they had heard Juror Four talk about G.M.'s testimony, and each stated the comments had been made on Tuesday. Alternate Juror One additionally testified to hearing another juror, possibly Juror Four, state that the testimony was "hard to hear." To the extent the trial court's finding as to the exact number of jurors who overheard Juror Four or the days on which this occurred were unsupported, these facts do not undermine its conclusions: that (1) no outside research into child development had been communicated to the other jurors and (2) each juror could remain impartial after Juror Four had expressed sympathy for G.M. following her testimony.

Defendant also argues the trial court abused its discretion in concluding that Defendant was not prejudiced. Defendant contends that, because G.M.'s testimony was crucial to the case, Juror Four's expression of sympathy after hearing the testimony irreparably tainted the jury.

"The trial judge is in a better position to investigate any allegations of misconduct, question witnesses and observe their demeanor, and make appropriate findings." *Drake*, 31 N.C. App. at 191, 229 S.E.2d at 54. Where the trial court's investigation was sufficient, we rarely disturb trial court rulings on juror misconduct.

The testimony of the jurors showed that their exposure to outside information was minimal, if any, and each testified that they could remain impartial. The extent of the jury's exposure to outside information was Juror Four's expression of sympathy

for G.M. after hearing her testimony. There is "no evidence tending to show the jurors were incapable of impartiality or were in fact partial in rendering their verdict." *Taylor*, 362 N.C. at 538, 669 S.E.2d at 260. The trial court did not abuse its discretion in ruling Defendant had not been prejudiced.

Thus, the trial court properly discharged its duty to investigate possible juror misconduct. Therefore, the trial court did not abuse its discretion in ruling that Defendant had not been prejudiced by any alleged juror misconduct. Consequently, the trial court did not err in denying Defendant's motion for mistrial

## Conclusion

Accordingly, for the foregoing reasons, there was no error at trial and the Judgments are affirmed.

NO ERROR.

Judges MURPHY and WOOD concur.